# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 5, 2012

## STATE OF TENNESSEE v. LESTON PARKER

**Appeal from the Circuit Court for Madison County**
**No. 10-706     Donald H. Allen, Judge**

_____

**No. W2011-01644-CCA-R3-CD  - Filed December 28, 2012**

_____

Following the Madison County Circuit Court's denial of his motion to suppress his statement to police, the Defendant-Appellant, Leston Parker, entered open guilty pleas to his charged offenses of promoting the manufacture of methamphetamine, a Class D felony, driving on a canceled, suspended, or revoked license, a Class B misdemeanor, driving while one's driver's license is canceled, suspended, or revoked because of a conviction for driving under the influence, a Class B misdemeanor, and violating the registration law, a Class C misdemeanor.  The trial court subsequently sentenced Parker to an effective sentence of ten years in the Tennessee Department of Correction.  On appeal, Parker argues that the trial court erred by:  (1) denying his motion to suppress, and (2) imposing an excessive sentence.  Upon review, we conclude that only the sentencing issue is properly before this court because Parker failed to reserve a certified question of law regarding the trial court's denial of his motion to suppress.  Accordingly, we dismiss the portion of the appeal regarding the denial of Parker's motion to suppress, and we affirm his effective sentence of ten years.  However, we remand the case to the trial court for the purpose of merging the conviction for driving while one's driver's license is canceled, suspended, or revoked because of a conviction for driving under the influence with the conviction for driving on a canceled, suspended, or revoked license.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed in Part; Judgments Affirmed and Remanded for Entry of Corrected Judgments**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and JEFFREY S. BIVINS, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the Defendant-Appellant, Leston Parker.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; James (Jerry) G. Woodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## <u>FACTUAL BACKGROUND</u>

On February 22, 2011, Parker filed a motion to suppress his statement to police on the basis that it was taken in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Following a hearing, the trial court denied the motion by written order on March 2, 2011.

At the May 2, 2011 plea submission hearing, the State summarized the facts supporting Parker's guilty pleas:

> Your Honor, may it please the Court, the State would show that on July the 31st [sic] of 2010[,] here in Madison County[,] that Sergeant Charles Mathis with the Jackson Metro Narcotic's Unit was at the Wal-Green's located on Campbell here in Jackson, Madison County. There he saw a vehicle being driven by the defendant, Leston Parker. That [vehicle] was an older model Ford Bronco [which was] driving around Wal-Green's. This vehicle then went to the Exxon across the street, parked[,] and the driver, the defendant, exited the vehicle from the Exxon and then walked across the street, to the Wal-green's. There in the Wal-Green's [he] made a purchase of Wal-Fed[,] which contains pseudoephedrine and then walked back across the street to the Bronco which was parked at that Exxon directly across the street from the Wal-Green's. Sergeant Mathis then ran a check–he felt this was suspicious[,] and he then ran a check of the license plate on that . . . Ford Bronco, but the registration came back to an Oldsmobile[,] putting the defendant in violation of the registration law on Count 4. The vehicle was then pulled over in front of 294 Sumnar Drive for that registration violation. There was a check done on the driver's license of the defendant. The license was revoked for at least one prior [conviction for driving under the influence]. That's Counts 2 and 3 of the Indictment. There is at least on[e] prior [conviction for driving under the influence] from 1991. His driving record shows the others making him a prior offender there driving that vehicle. At that time Sergeant Mathis then took a statement from the defendant in which the defendant stated that he was going to use this pseudoephedrine to sell the box for $100 and that he knew that it was going to be used in the manufacture of methamphetamine.

If the Court will recall, there was actually a Motion to Suppress hearing. The Court heard from Sergeant Mathis back on February the 28th [sic] and he testified as to that statement that was given [by Parker]. This all happened here in Madison County.

Parker acknowledged that the aforementioned facts were true. He then entered guilty pleas to promoting the manufacture of methamphetamine, driving on a canceled, suspended, or revoked license, driving while one's driver's license is canceled, suspended, or revoked because of a conviction for driving under the influence, and violating the registration law. The record contains no indication that Parker attempted to reserve a certified question of law regarding the trial court's denial of his motion to suppress.

**Sentencing Hearing.** At the June 13, 2011 sentencing hearing, the State admitted copies of the presentence investigation report and judgments for Parker's 2004 conviction for sexual battery by an authority figure and 2006 conviction for burglary into evidence, but it presented no other proof. Parker and his ex-wife, Gail Crutchfield, testified for the defense.

Parker testified that he believed he could follow all the probation rules if the court determined that probation was appropriate. He stated that he could pass a drug test and that he had an eight-year-old son who had been living with him for the past two months. Regarding the offenses in this case, Parker said, "I [used] bad judgment on that day that incident happened. I apologize for it." He acknowledged that he should not have been driving the day of his arrest because he did not have a valid driver's license. He said this was the first time that he had bought a box of pseudoephedrine for another person. He also said he had never heard that buying pseudoephedrine for someone else was a criminal offense.

On cross-examination, Parker denied that he was addicted to methamphetamine. He admitted that he bought the pseudoephedrine for his nephew, who was planning to make methamphetamine with it. Parker said that he was not on probation at the time he committed the offenses in this case.

When the trial court asked about his conviction for sexual battery by an authority figure for which he received an eight-year sentence, Parker said that he began serving his time in 2004, that he was released in 2009, and that he fully served his sentence and was never placed on parole. However, Parker admitted that while on release status as a trustee for the sexual battery conviction, he committed the burglary offense that resulted in his 2006 conviction. He informed the court that he served his two-year sentence for the burglary conviction at the same time that he served his eight-year sentence for the sexual battery

conviction. Parker acknowledged that the convictions listed in the presentence investigation report were correct.

Parker's ex-wife, Gail Crutchfield, testified that she and Parker had a son who had been diagnosed with cirrhosis and who was receiving monthly treatments at Vanderbilt Hospital. Crutchfield said she told Parker that if he took care of their son when he got out of prison for his sexual battery conviction, then she would give him custody. She said that following the sexual battery conviction, Parker stayed out of trouble until he was arrested for the offenses in this case. Crutchfield asked the trial court to give Parker an alternative sentence:

> If there was any way possible, I would really appreciate it if [the court] could give him some kind of house arrest or supervised [probation]. Anything but jail time. My son is eight years old. He's done missed six years of his daddy's life for something that his dad did, but, I mean, it was a mistake. It happened. He's done his time over it. Now he's out and he was trying to be a father. I'm not saying what he [did] was right because, you know–but he is trying to be a father and be there. He is working everyday. He is buying his clothes. He was sending him to school. He was making sure he was [taken] care of. And now that he's sick, I need him out [of prison] to help me. I've got six other children. Not with him, but I've got six other children.

On cross-examination, Crutchfield stated that the victim of Parker's sexual battery conviction was her daughter, who was Parker's step-daughter at the time. She first became aware that Parker bought his nephew the pseudoephedrine for the purpose of making methamphetamine when Parker went to jail for that offense. She acknowledged that she was aware of Parker's pending charge for promoting the manufacture of methamphetamine at the time she agreed to give him joint custody of their eight-year-old son.

During the trial court's oral sentencing findings, it noted that Parker admitted that he purchased the pseudoephedrine pills for the purpose of promoting the manufacture of methamphetamine but denied that he was addicted to methamphetamine. The court said that it had to "question [Parker's] honesty about not having a drug problem when why else would he be out purchasing pills and [giving] these pills to someone to manufacture methamphetamine."

The trial court determined that Parker was a Range III, persistent offender based on his prior felony convictions for grand larceny, theft of property valued at $1000 or more but less than $10,000, theft of property valued at more than $500 but less than $1000, sexual battery by an authority figure, and two burglary convictions. It noted that Parker was "close

-4-

to being a career offender" because he had six prior felony convictions, even though only five could be used to enhance him into a higher range. See T.C.A. § 40-35-107(a)(4) (2006). The court also noted that Parker had received misdemeanor convictions for vandalism, failure to stop at the scene of an accident, failure to maintain control of his vehicle, public intoxication, driving under the influence, and four convictions for driving on a revoked or suspended driver's license. The court stated that Parker's criminal history indicated that he never reinstated his driver's license after it was suspended because of his 1991 conviction for driving under the influence.

The trial court observed that Parker had received two convictions for driving on a suspended license in 1995 and two convictions for driving on a revoked license in 1997. It noted that while Parker was on probation for his 1997 convictions for burglary and theft, he committed the offenses of driving on a revoked license and theft. It also noted that while Parker was serving the eight-year sentence for the sexual battery conviction as a trustee on release status, he committed one of his burglary offenses. The court stated that although the indictment charged Parker with a first offense of driving while one's driver's license is canceled, suspended, or revoked because of a conviction for driving under the influence, this was actually Parker's fifth offense.

The trial court determined that enhancement factors (1) and (8), that the defendant had a history of criminal convictions or criminal behavior in addition to that necessary to establish his range and that the defendant had failed to comply with a sentence involving release into the community, applied to all of the convictions in this case. See id. § 40-35-114(1), and (8) (2006). It also determined that mitigating factor (1), that the defendant's criminal conduct neither caused nor threatened serious bodily injury, applied to all of the convictions. See id. § 40-35-113(1) (2006). The court gave Parker some credit for mitigating factor (13) because he admitted to the police that he was buying the pseudoephedrine for the promotion of the manufacture of methamphetamine and because he pleaded guilty in this case. See id. § 40-35-113(13) (2006).

For the conviction for promoting the manufacture of methamphetamine, the court sentenced Parker to ten years. The court said that even though it believed that Parker qualified for a sentence at the top of the range for this offense, it wanted to reduce the sentence to the middle of the range because Parker entered guilty pleas. See id. § 40-35-112(c)(4) (2006). For the two convictions for driving on a revoked license, the court sentenced Parker to six months with a release eligibility of seventy-five percent and revoked his license for one year. See id. §§ 55-50-504(a)(1), 40-35-111(e)(2) (2006). For the conviction for violating the registration law, the trial court sentenced Parker to thirty days with a release eligibility of seventy-five percent. See id. § 40-35-111(e)(3) (2006). The court

ordered that these sentences be served concurrently, for an effective sentence of ten years.

Regarding whether to grant an alternative sentence, the court considered Parker's extensive criminal history, his physical and mental condition, his social history, the facts and circumstances surrounding the offense, the deterrent effect on Parker, and the best interests of Parker and the public. The court found that "the interests of society in being protected from possible future criminal conduct by [Parker] are great." It stated, "I can't ignore the fact that he's got six prior felony convictions and nine prior misdemeanor convictions. I mean, that certainly doesn't speak well for Mr. Parker." The trial court ultimately determined that Parker was not a proper candidate for alternative sentencing because of his extensive criminal history and his inability to abide by previous sentences less restrictive than confinement. See id. § 40-35-103(1)(A), (C). At the conclusion of the hearing, the trial court ordered Parker to serve his effective ten-year sentence in the Tennessee Department of Correction.

## ANALYSIS

**I. Denial of Motion to Suppress.** Parker argues that the trial court erred in denying his motion to suppress his statement to police. He acknowledges that his judgment for promoting the manufacture of methamphetamine did not contain a certified question of law; however, he claims that he filed a motion to correct the judgment to include his certified question of law, which the trial court denied. As we previously noted, the record contains no indication that Parker attempted to reserve a certified question of law regarding the trial court's denial of his motion to suppress. See Tenn. R. App. P. 24(b) ("[T]he appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal.").

In response, the State contends that Parker failed to comply with the strict requirements for reserving a certified question of law because the pertinent judgment did not contain a statement of the certified question of law and did not refer to or incorporate another document containing the certified question of law. Because the question of law is not properly before this court, we dismiss this portion of the appeal for lack of jurisdiction.

Tennessee Rule of Criminal Procedure 37(b), which establishes the procedure for reserving a certified question of law, provides:

> **When an Appeal Lies.** The defendant or the state may appeal any order or judgment in a criminal proceeding when the law provides for such appeal. The defendant may appeal from any judgment of conviction:

. . . .

(2) on a plea of guilty or nolo contendere, if:

(A) the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved–with the consent of the state and of the court–the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

(i) the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review;

(ii) the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

(iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b) (2010) (amended July 1, 2011).

A defendant must comply with all of the requirements of Rule 37 to confer jurisdiction on this court following the entry of a guilty plea. State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996). The Tennessee Supreme Court provided detailed requirements for reserving a certified question of law in State v. Preston:

Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial

judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to Tenn. R. Crim. P. 37 have been dismissed because the certified question was not dispositive. Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

759 S.W.2d 647, 650 (Tenn. 1988) (emphasis added). "Preston puts the burden of reserving, articulating, and identifying the issue upon the defendant." Pendergrass, 937 S.W.2d at 838.

In State v. Armstrong, 126 S.W.3d 908, 912 (Tenn. 2003), the Tennessee Supreme Court held that it had "never applied a substantial compliance standard to the Preston requirements[.]" Instead, it reiterated that the Preston requirements regarding Rule 37 were "'explicit and unambiguous.'" Id. (quoting State v. Irwin, 962 S.W.2d 477, 479 (Tenn. 1998); Pendergrass, 937 S.W.2d at 837).

However, the Tennessee Supreme Court relaxed the Preston requirements slightly by allowing a certified question to be set out in an independent document, so long as the independent document is incorporated by reference into the judgment. Irwin, 962 S.W.2d at 479 (stating that a judgment may refer to, or incorporate, an independent document, thereby satisfying the requirements of Preston). In addition, the court held that corrective orders are permissible where a certified question has been omitted from a judgment; however, such orders must be filed while the trial court retains jurisdiction. Armstrong, 126 S.W.3d at 912-13 (concluding "that the trial court's corrective nunc pro tunc order entered after the final judgment while the trial court had jurisdiction and before the filing of a notice of appeal under Rule 36 of the Tennessee Rules of Criminal Procedure complied in all respects with the prerequisites for raising a certified question of law on appeal"). Once a notice of appeal is filed, the jurisdiction becomes vested in the appellate court, and the trial court may not amend its judgment. Pendergrass, 937 S.W.2d at 837.

Here, the pertinent judgment does not contain a statement of the certified question of law. In addition, the judgment does not refer to an independent document containing a statement of the certified question of law. See Irwin, 962 S.W.2d at 479. Because the judgment of conviction is the final order in this case and does not reference an independent document, it must satisfy all of the Preston requirements. See id.; Armstrong, 126 S.W.3d at 912-13. Because we are without jurisdiction to review this case, the appeal is dismissed.

**II. Sentencing.** Parker also argues that the trial court's imposition of a ten-year sentence was excessive. Specifically, he contends that the trial court should have granted him an alternative sentence, which would be the least severe measure necessary to achieve the purposes and principles of the sentencing act. See T.C.A. § 40-35-103(4) (2006). Parker asserts that he possessed only one box of pseudoephedrine and that "not until after he made a statement to Sergeant Mathis did the purchase of this box of pills become a felony." The State responds that the trial court properly sentenced Parker to ten years in confinement. We agree with the State.

Pursuant to the 2005 amendments to the sentencing act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Id. § 40-35-210(b) (2006). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d) (2006), Sentencing Comm'n Comments.

Because the 2005 amendments to the sentencing act gave trial courts broad discretion in sentencing, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. at *17. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id.

Parker specifically argues that the trial court erred in failing to impose an alternative sentence. Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) (2006) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" A trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D) (2006). In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C) (2006).

The principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4) (2006). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be

considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5) (2006).

The trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). When a defendant is considered a favorable candidate for alternative sentencing, the State has the burden of presenting evidence to the contrary. See State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, the defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. See id. (citing T.C.A. § 40-35-303(b)).

Parker was eligible for probation because his sentence was ten years or less and the offenses for which he was convicted were not specifically excluded by statute. T.C.A. § 40-35-303(a) (2006). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b) (2006). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). Moreover, the Tennessee Supreme Court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983) (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)).

The trial court's oral sentencing findings show that it thoroughly considered the purposes and principles of the sentencing act before imposing Parker's sentence. The court found that Parker was a Range III, persistent offender based on his extensive criminal history. Accordingly, Parker was not considered a favorable candidate for alternative sentencing. The court noted that Parker had committed crimes while on felony probation and had committed a burglary while serving as a trustee on release status while serving his

sentence for sexual battery.  It also noted that this was Parker's fifth conviction for driving on a revoked license and that Parker had not held a valid driver's license since 1991, even though he continued to drive illegally.  The trial court sentenced Parker to an effective sentence of ten years, the middle of his range.  It determined that Parker was not a proper candidate for alternative sentencing because of his extensive criminal history and his inability to abide by previous sentences less restrictive than confinement.  T.C.A. § 40-35-103(1)(A), (C).  We conclude that the trial court did not err in imposing a ten-year sentence and in denying alternative sentencing in Parker's case.

We also conclude that the trial court did not err in refusing to grant Parker a community corrections sentence.  The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." Id. § 40-36-103(1) (2006).  Eligible offenders under the Community Corrections Act include:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;

> (B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

> (C) Persons who are convicted of nonviolent felony offenses;

> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

> (F) Persons who do not demonstrate a pattern of committing violent offenses; and

> (2) Persons who are sentenced to incarceration or are on escape at the time of consideration will not be eligible for punishment in the community.

Id. § 40-36-106(a)(1)(A)-(F), (2) (2006).  Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right."  State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)).  Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter."  T.C.A. § 40-36-106(d) (2006).

As we previously mentioned, Parker was sentenced as a Range III, persistent offender for the convictions in this case and, therefore, was not considered a favorable candidate for alternative sentencing.  The record shows that the trial court denied all forms of alternative sentencing because of Parker's extensive criminal history and his inability to abide by previous sentences less restrictive than confinement.  See id. § 40-35-103(1)(A), (C).  We conclude that the trial court did not abuse its discretion in refusing to grant Parker a community corrections sentence.

Because the trial court sentenced Parker within the appropriate range, considered the purposes and principles of the sentencing act, and considered the appropriate enhancement and mitigating factors, we uphold Parker's effective sentence of ten years in the Tennessee Department of Correction.  See Bise, 380 S.W.3d at 706.  The trial court's judgments are affirmed.

## CONCLUSION

Upon review, we dismiss the portion of the appeal regarding the trial court's denial of Parker's motion to suppress, and we affirm his effective sentence of ten years in the Tennessee Department of Correction.  However, we remand the case to the trial court for the purpose of merging the conviction for driving while one's driver's license is canceled, suspended, or revoked because of a conviction for driving under the influence with the conviction for driving on a canceled, suspended, or revoked license.

_____

CAMILLE R. McMULLEN, JUDGE